IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| CHARLES ADAMS, ET AL., ) | |
| ) | |
| Plaintiffs, ) | Case No. 10 C 3264 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| ) | |
| RAINTREE VACATION EXCHANGE, LLC, ) | |
| et al., ) | |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER

Charles Adams and 249 other plaintiffs (collectively "Plaintiffs") sued Raintree Vacation Exchange, LLC, Raintree Resorts International, Inc., CR Holding and Doug Bech ("Bech") (collectively "Raintree"), Starwood Vacation Ownership, Starwood Vacation Properties, Starwood Hotel and Resorts, Inc., Starwood Resorts and Hotel (collectively "Starwood"), Sergio Rivera, Michael H. Glazer, and Goodwin Proctor, LLP. Plaintiffs alleged fraud from Raintree and Starwood's sale of fractional interests in condominium units for a resort in Mexico. Raintree moved to dismiss the First Amended Complaint for lack of personal jurisdiction and improper venue and the Starwood moved to dismiss only for improper venue.[1] For the following reasons, the Court denies Raintree's Motion to Dismiss for Lack of Personal Jurisdiction and orders an evidentiary hearing with respect to Raintree and Starwood's Motion to Dismiss for Improper Venue.

## STATEMENT OF FACTS

The following facts are taken from Plaintiffs' First Amended Complaint and are assumed to be true for purposes of these motions to dismiss. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.

---

[1] Plaintiffs have not yet served Michael Glazer or Goodwin Proctor LLP.

1995). The Plaintiffs are U.S. citizens, some residents of Illinois, who purchased joint fractional interests in a resort facility. (First Am. Compl. ¶ 19.) On August 18, 1997, Raintree and Starwood entered into a Joint Operating Agreement, where both parties agreed to work together to develop, obtain, and sell resorts. (*Id.* ¶ 2.) In the beginning of 2004, Raintree and Starwood announced the sale of fractional condominium ownerships for a resort in Los Cabos, Mexico ("Resort"), the resort at issue in this litigation. (*Id.* ¶ 5.)

The building and development costs for the Resort exceeded $26 million dollars. (*Id.* ¶ 6.) These costs were met by selling fractional interests in condominium units to Plaintiffs. (*Id.*) In 2004, the Plaintiffs and Desarrollos Turisticos Regina S. De R.L. De C.V. ("DTR") entered into a Fractional Trust Beneficiary Assignment Agreement ("Purchase Agreement") documenting the rights and obligations of the parties with respect to the sale of these fractional interests. (*Id.* ¶ 29.) Plaintiffs allege that when this agreement was entered into DTR was a wholly owned subsidiary of Raintree and also under Starwood's control via the joint venture. (*Id.*) A provision of this Purchase Agreement stated:

> **Twelfth. Applicable Laws and Competent Courts.**
> In case of controversy on the interpretation and compliance with the rights and obligations of this Agreement, the parties hereby agree to submit themselves to the applicable laws and competent courts of the City of Mexico, Federal District, expressly waiving any other forum that may correspond to them by reason of their present or future domiciles.

(R. 67, Ex. 4.)

In the first part of this two-part scheme, Plaintiffs allege that Raintree and Starwood, who "dissipated" the funds in various ways unrelated to the building and maintaining of the Resort, had no intention at the time that Plaintiffs purchased their fractional interests to build the resort. (*Id.* ¶¶

7, 25.) Instead, $10,000,000 of the funds were used to pay a pre-existing debt between Raintree and Starwood, as well as commissions or sales incentives to employees. (*Id.*) This left insufficient funds to complete the Resort project. (*Id.*)

Raintree and Starwood acknowledged their obligation to repay the Plaintiffs. (*Id.* ¶ 8.) Regardless, to protect their interests, the Plaintiffs formed a Committee consisting of others who suffered financial loss as a result of Raintree and Starwood's misuse of the contributed funds. (*Id.* ¶ 9.)[2]

Counsel for Plaintiffs and Raintree and Starwood met in Chicago on June 10, 2009 to discuss the possibility of settlement. (R. 93, Ormiston Aff. ¶ 3.) All the parties specifically agreed that from June 9, 2011 through June 11, 2009, Raintree and Starwood's attendance at the settlement meeting "shall not confer jurisdiction" over them. (R. 93, Ex. A, ¶ 4.) The settlement meeting did not resolve the dispute, and the parties proceeded forward with mediation in Chicago on October 12, 2009. (R. 93, Ormiston Aff. ¶ 4.) Once again, the parties agreed that Raintree and Starwood's presence in Chicago from October 11, 2009 through October 14, 2009 "shall not confer jurisdiction." (R. 93, Ex. B, ¶ 7.)

But the alleged fraud did not stop with the misuse of Plaintiffs' funds. Raintree and Starwood made representations that repayment was forthcoming, even though they knew payment could not and would not be made, in order to stall Plaintiffs' attempts to retain counsel and seek legal redress. (*Id.* ¶ 17.) Specifically, in 2008 and August 2009, outside of the settlement meeting

---

[2] One member on the Committee was Michael Glazer ("Glazer"), an attorney and a named (but unserved) defendant in this case. (*Id.* ¶ 10.) Glazer provided general legal advice to the Committee, suggested that the Plaintiffs did not have to get their own lawyers, and urged them to accept in good faith Raintree and Starwood's representations of repayment. (*Id.* ¶ 10.) Despite his reassurances, however, Glazer did not disclose that his law firm was representing Starwood's interests. (*Id.* ¶ 11.) As Glazer and his firm have not been formally served, and have no involvement in the motions now pending, the Court will limit its discussion of the facts constituting Count II (malpractice).

and mediation, Raintree and Starwood contacted multiple Plaintiffs, urging them not to retain counsel and promising a significant settlement offer if they did not move forward with legal action. (First Am. Compl. ¶ 18.) Raintree and Starwood, through the Committee and by directly soliciting the Plaintiffs, made these repayment promises for two reasons. (*Id.* ¶ 13.) First, even though Raintree and Starwood knew that full or even substantial repayment was not a financial reality, they made these promises so Plaintiffs would settle the case for a fraction of what they initially paid for it, without taking steps to guard their interests. (*Id.* ¶ 18.) Second, they enabled Raintree and Starwood to regain ownership interests from the Plaintiffs for pennies on the dollar without having to pay the full initial purchase price. (*Id.* ¶¶ 34, 35)

## **DISCUSSION**

Raintree moved to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction and both Raintree and Starwood moved to dismiss under Rule 12(b)(3) for improper venue based on the forum selection clause requiring all litigation to take place in Mexico. In the middle of briefing on these motions, Plaintiffs filed a First Amended Complaint. Raintree, Starwood, and Plaintiffs submitted position papers on whether the First Amended Complaint cured the deficiencies raised in the motions. The First Amended Complaint takes the place of the original Complaint and renders it void. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). In addition to the briefing on the motions to dismiss, the Court will consider the parties' position papers in ruling on jurisdiction and improper venue in light of the First Amended Complaint's allegations.

I.      **Personal Jurisdiction**

In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the First Amended Complaint as true unless controverted by affidavits outside the pleadings, which the Court may also consider. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Factual disputes are construed in the Plaintiffs' favor. *See Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). When a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, the Court decides a motion challenging jurisdiction on the basis of written submissions, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

The Court must "determine whether the state in which the district court is located is authorized to exercise personal jurisdiction" in order to ascertain whether it has personal jurisdiction over a defendant. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). The Illinois long arm statute that governs here permits the exercise of jurisdiction "on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209(c). Although the due process provisions of the Illinois and United States Constitutions are not identical, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l.*, 302 F.3d at 715.

Personal jurisdiction is proper, therefore, only if the defendant has "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction

may be either general or specific. *See Helicopteros Nationales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). Here, the parties only addressed whether this Court has specific jurisdiction over Raintree.

Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited, as long as those contacts are of a nature and quality as to give the defendant fair warning that it could be required to defend a suit there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Central States, Se. & Sw. Areas Pension Fund. v. Reimar Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). In determining whether specific jurisdiction exists over an out-of-state defendant, the Court must determine whether the minimum contacts between the defendant and the forum state demonstrate that the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state such that it "should reasonably anticipate being haled into court" there. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997*)*. The Court focuses on "the relationship among the defendant, the forum, and the litigation." *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). The main factor in the minimum contacts analysis is not physical presence in the forum state but rather "foreseeability." *Id.*

Under the Illinois long arm statute, 735 ILCS 5/2-209(a)(2), a Court has jurisdiction over a defendant who commits a tortious act in Illinois that causes an injury in Illinois. *Heritage House Rest., Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281-82 (7th Cir. 1990). A nonresident sending misleading communications to Illinois plaintiffs in furtherance of a fraudulent scheme can be a basis for jurisdiction. *Id.* at 282 (telephone conversation from defendant to Illinois resident where defendant misrepresented the amount of expenditures that plaintiff had to reimburse was

sufficient to establish minimum contacts); *see, e.g., Club Assistance Program, Inc. v. Zukerman*, 594 F. Supp. 341, 347-48 (N.D. Ill. 1984) (Shadur, J.) (misrepresentations over telephone directed at Illinois resident regarding corporation's ability to repay debts, in order to cover up the scheme, was sufficient basis for jurisdiction).

Here, Raintree had contact with Illinois in the second phase of the scheme, namely, representations made to Plaintiffs, specifically Illinois residents, that it would repay a substantial portion of their initial investments by buying back their interests for a fraction of the initial purchase price. The First Amended Complaint alleges, and Raintree's affidavits do not controvert, the fact that Raintree "directly solicited" all Plaintiffs, including those in Illinois, with promises of repayment. (First Am. Compl. ¶ 13.) These misrepresentations about the ability of Raintree to repay the Plaintiffs, and attempts to settle and regain title to the condominium interests, were intended to not only bar the Plaintiffs from asserting their claims in Court but also to allow Raintree to regain ownership in the interests, finalizing the scheme. Both of these objectives furthered the alleged fraudulent scheme.

Raintree's direct solicitation of Illinois residents is sufficient for personal jurisdiction, even though Plaintiffs do not assert that the initial transaction in 2004, where Plaintiffs purchased the fractional interests from DTR, had ties to Illinois. Similarly, although a party can agree to "contract around" certain minimum contacts, as exemplified by the June 2009 settlement meeting and October 2009 mediation, the solicitation of Plaintiffs regarding repayment occurred outside of these exempted periods. *See Employers Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 943 (7th Cir. 1999) (citing *RAR,Inc.*, 107 F.3d at 1280) (because a party can waive personal jurisdiction, parties can agree to "contract around minimum contacts requirement"). In sum,

according to the allegations in the First Amended Complaint, there is a prima facie case that Raintree had specific contacts with Illinois for the purpose of executing the scheme, such that it is reasonably foreseeable that it could be sued in Illinois. The Court therefore denies Raintree's Motion to Dismiss for Lack of Personal Jurisdiction.[3]

## II.     Improper Venue

When Plaintiffs initially purchased the fractional ownership interests in the Resort they signed the Purchase Agreement with DTR, which contained a provision requiring that all disputes relating to the agreement would be litigated in Mexico. (R. 67, Ex. 4.) Under its terms Plaintiffs also agreed to "waive" litigating the case in any other forum. (*Id.*) Plaintiffs attack the validity of the forum selection clause for two reasons: (1) it is irrelevant to the claims in the First Amended Complaint, which deal with Raintree and Starwood's "post closing actions," namely the unfulfilled promise to pay Plaintiffs after the project ran out of funds; and (2) Raintree and Starwood are not able to step into DTR's shoes to enforce the clause.

Dismissal under Rule 12(b)(3) for improper venue may be appropriate if the parties agreed to a forum selection clause. *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006). Courts typically enforce the parties' agreement to litigate disputes in a particular forum because assent to the forum selection clause operates as waiver of the ability to challenge the agreed-

---

[3] Raintree contends that there is no personal jurisdiction over Bech under the fiduciary shield doctrine. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (denying personal jurisdiction over an individual defendant whose contacts with the forum state were "solely on behalf of his employer or other principal"). But the shield is unavailable for high-ranking company officers, such as Bech who is the chairman and chief executive officer of Raintree, who have a "direct financial stake in the company's health." *See, e.g., Margulis v. Medical Parts Intern., Inc.*, 98 C 714, 1999 WL 183648, at *5 (N.D. Ill. March 25, 1999) (Williams, J.); *see Shapo v. Engle*, No. 98 C 7909, 1999 WL 1045086, at *22 (N.D. Ill. Nov. 12, 1999) (Kocoras, J.) ("high-ranking officers . . .cannot avail themselves of the [fiduciary shield] doctrine").

8

upon forum based on "inconvenience." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

### A. Relevance

Plaintiffs claim that the fraud allegation in the First Amended Complaint relates only to the "post closing actions," where Raintree and Starwood made promises about repayment, not to the initial misrepresentation in the sale of the fractional ownership interests. As a result, Plaintiffs maintain, the Purchase Agreement—and the forum selection clause—do not apply.

The allegations in the Third Amended Complaint, however, portray the fraud as an inseparable two-part scheme. In other words, Plaintiffs' allegations include misrepresentations at the initial purchase that enabled the scheme to obtain capital and later misrepresentations about repayment aimed at buying back the Plaintiffs' interests and foreclosing Plaintiffs from legal relief. The Purchase Agreement covers "controvers[ies] on the interpretation and compliance with the rights and obligations of this Agreement," and this cannot be limited solely to the initial purchase. (R. 67, Ex. 4.) The broader fraudulent scheme includes Raintree and Starwood's alleged efforts to finalize the scheme by buying back the fractional interests from Plaintiffs. Because misrepresentations during the initial purchase and later during repayment are part of the same scheme, and both are directly related to the Purchase Agreement, this argument is unavailing.

### B. Affiliation of Raintree and Starwood to DTR

DTR, the initial developer, signed the Purchase Agreements with Plaintiffs that included the forum selection clause. The issue is whether Raintree and Starwood, as nonsignatories to the Purchase Agreement, can enforce the forum selection clause against Plaintiffs.

9

"To bind a [non-signatory] to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). But because "closely related" and "foreseeability" are difficult to define and apply, the Seventh Circuit has used the "principle of mutuality" to determine whether a non-signatory can enforce a forum selection clause. *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995). The Seventh Circuit held that Refco, a commodities broker, was "closely related" to the signatories to a forum selection clause, who were promoters and trustees entirely under its control, and could therefore invoke the clause. *Id.* at 828. The *Refco* plaintiffs alleged that Refco had total control of the signatories and could have used this argument to enforce the forum selection clause against Refco; but "[i]f so, equity requires that Refco be allowed to invoke the clause. Otherwise the plaintiffs would have a choice of venues but Refco would not, and there is no reason for such an asymmetry of procedural choices." *Id.* Moreover, by invoking the forum selection clause to which he was not a signatory, Refco was accepting the plaintiffs' premise that "the promoters and trustees were indeed simply cat's paws of Refco." *Id*; *see Am. Patriot*, 364 F.3d at 889 (suing an "affiliate" of signatory did not "defeat" forum selection clause); *Hugel*, 999 F.2d at 210 (signatory owned 100% of stock in one non-signatory and 99% of the stock of another, and both non-signatories were "equally bound" by the forum selection clause). Finally, a variation of the equitable estoppel doctrine can support allowing nonsignatories to enforce the forum selection clause. *See, e.g., Organ v. Byron*, 434 F. Supp. 2d 539, 543 (N.D. Ill. 2005) (Zagel, J.) (quoting *Sparks Tune-Up Centers, Inc. v. Strong*, No. 95 C 5902, 1994 WL 188211, at *5 (N.D. Ill. May 12, 1994) (allowing non-signatory to "benefit from" a forum selection clause in order to "prevent a contracting party from escaping contractual obligations which he bargained for/or agreed upon")).

The nature of the corporate relationship between Raintree and DTR is critical to determining whether they are "closely related." The Plaintiffs offer a different understanding of that relationship than Raintree and Starwood. For example, Plaintiffs point to SEC documents showing that Raintree purchased all of DTR's stock in 1997, years before the fractional interests in the Resort were sold to Plaintiffs. Plaintiffs used this piece of evidence to argue that Bech's affidavit is false, an allegation that the Court takes very seriously. As a result, Plaintiffs also allege that DTR was a wholly owned subsidiary of Raintree. (Third Am. Compl. ¶ 29.) In contrast, Bech's affidavit does not specifically state that Raintree acquired its interest in DTR in 2007. Rather, it more generally lays out a series of mergers and acquisitions, without specifically noting how Raintree and DTR are related. It states that in February 2007 DTR merged with CR Resorts Cancun, and in February 2009 this entity merged with CR Resorts Holding, which became the surviving entity. (Bech Aff. ¶ 2.) Raintree currently owns Canarias, which owns CR Resorts Parent Nominee Holding, and both Caniarias and CR Resorts Parent Nominee Holding own all the equity of CR Resorts Holding, the successor-in-interest to DTR. (*Id.* ¶ 3.) While Raintree's defense, in part, is that DTR is a separate company, it also contends that it is sufficiently affiliated to DTR to enforce the forum selection clause.

Because Bech's affidavit and Plaintiffs' documents do not consistently and adequately clarify the corporate relationship between DTR and Raintree, an issue upon which Raintree (and Starwood's) ability to enforce the forum selection clause hinges, the Court will have an evidentiary hearing on this issue. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001) (when venue depends on contested facts, court can hold evidentiary hearing before proceeding forward). The Court therefore orders that there will be an evidentiary hearing to elucidate the nature

of Raintree's interest in DTR. As such, the Court denies Plaintiffs' request for limited discovery on personal jurisdiction and improper venue, as the evidentiary hearing is a more precise and efficient way to gather facts on this narrow issue.

The Court also denies Plaintiffs' Motion to Deem Facts Not in Dispute. Plaintiffs want the Court to find that because Raintree and Starwood have not specifically controverted certain statements about Raintree's interest in DTR, such facts should be deemed admitted. This rule applies to a Rule 56 motion for summary judgment, not to this motion to dismiss. In a Rule 12(b)(3) motion to dismiss for improper venue the Court can consider the complaint, affidavits, and facts outside the complaint without converting it to a motion for summary judgment under Rule 56. *See, e.g., Liebl v. Mercury Interactive Corp.*, No. 06 C 5364, 2006 WL 362764, at *1 (N.D. Ill. Dec. 12, 2006) (Conlon, J.). Rule 12(d), which governs the conversion of a motion to dismiss to a motion for summary judgment based on the submission of documents because the parties submitted evidence outside the pleadings, specifically applies only to a Rule 12(b)(6) motion to dismiss for failing to state a claim and a Rule 12(c) motion for judgment on the pleadings, neither of which apply here. The Court therefore denies Plaintiffs' Motion to Deem Facts Not in Dispute.

**CONCLUSION AND ORDER**

The Court denies Raintree's Motion to Dismiss for Lack of Personal Jurisdiction and denies Plaintiffs' Motion for Limited Discovery and to Deem Facts Not in Dispute. The Court orders an evidentiary hearing on issue of Raintree's interest in DTR and therefore takes under advisement, pending that hearing, Raintree and Starwood's Motion to Dismiss for Improper Venue.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 28, 2011