IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES ADAMS, *et al.*,                        )
                                                )
                    Plaintiffs,                 )    Case No. 10 C 3264
          v.                                    )
                                                )     Judge Virginia M. Kendall
RAINTREE VACATION EXCHANGE, LLC, *et al.*,      )
                                                )
                    Defendants.                 )
                                                )

## MEMORANDUM OPINION AND ORDER

Charles Adams and numerous other plaintiffs (collectively "Plaintiffs") sued Raintree Vacation Exchange, LLC, Raintree Resorts International, Inc., CR Holding, and Doug Bech ("Bech") (collectively "Raintree"); Starwood Vacation Ownership, Starwood Vacation Properties, Starwood Hotel and Resorts, Inc., and Starwood Resorts and Hotel (collectively "Starwood"); Sergio Rivera; and attorney Michael Glazer ("Glazer") and Goodwin Procter, LLP for participation in a fraudulent scheme to sell fractional interests in condominium units for an unbuilt resort in Los Cabos, Mexico. Specifically, Plaintiffs allege that Raintree and Starwood engaged in fraud when they sold the interests without ever intending to build the resort. Plaintiffs also allege that, in furtherance of the scheme, Raintree, Starwood, and Glazer deceived the Plaintiffs into selling back, for pennies on the dollar, the interests in the condos they had purchased when it became clear that there was insufficient funding to complete the building of the resort.

Both Raintree and Starwood have moved to dismiss under Rule 12(b)(3) for improper venue because the Plaintiffs' contracts for the condominium interests contain a forum selection clause that requires all disputes arising from the sale of the interests to be litigated in Mexico. The Court previously denied Raintree's motion to dismiss based on lack of personal jurisdiction and deferred

ruling on the improper venue motion pending an evidentiary hearing. The scope of the evidentiary hearing was to clarify the relationship between the Mexican signatory of the forum selection clause, Desarrollos Turisticos Regina S. De R.L. De C.V. ("DTR"), and Raintree and Starwood. Now, after having the evidentiary hearing on June 13, 2011, the Court is able to rule on the merits of Raintree and Starwood's motions to dismiss for improper venue. They are also a number of additional pending motions that the Court will address in this order. For the following reasons, the Court grants both motions to dismiss for improper venue.

## BACKGROUND

### I.    Alleged Scheme

The Court will incorporate its background facts set forth in its April 28, 2011 order and assumes that the facts in the First Amended Complaint are true for the purpose of ruling on these Motions to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Plaintiffs are United States citizens, some residents of Illinois, who purchased joint fractional interests in a resort facility called Club Regina or the Residence Club at Grand Regina ("the Resort"). (Doc. 119, First Am. Compl. ¶¶ 5, 19.) On August 18, 1997, Raintree and Starwood entered into a Joint Operating Agreement, where both parties agreed to work together to develop, obtain, and sell resorts. (*Id.* ¶ 2.) In the beginning of 2004, Raintree and Starwood announced the sale of fractional condominium ownerships for the Resort. (*Id.* ¶ 5.)

The building and development costs for the Resort exceeded $26 million. (*Id.* ¶ 6.) These costs were met by selling fractional interests in condominium units to Plaintiffs. (*Id.*) In 2004, the each Plaintiff entered into a Fractional Trust Beneficiary Assignment Agreement ("Purchase Agreement") with DTR documenting the rights and obligations of the parties with respect to the sale

of these fractional interests.  (*Id.* ¶¶ 5-6; see also Marquez Dec., Doc. 69-3, ¶ 4; Doc. 69, Ex. 4.)

The Purchase Agreement has a forum selection clause that states:

> **Twelfth.  Applicable Laws and Competent Courts.**
> In case of controversy on the interpretation and compliance with the rights and obligations of this Agreement, the parties hereby agree to submit themselves to the applicable laws and competent courts of the City of Mexico, Federal District, *expressly waiving any other forum that may correspond to them by reason of their present or future domiciles*.

(*Id.*) (emphasis added).

In the first part of this two-part scheme, Plaintiffs allege that Raintree and Starwood, who "dissipated" the funds in various ways unrelated to the building and maintaining of the Resort, had no intention at the time that Plaintiffs purchased their fractional interests to build the Resort.  (*Id.* ¶¶ 7, 25.)  Instead, $10,000,000 of the funds were used to pay a pre-existing debt between Raintree and Starwood, as well as commissions or sales incentives to employees, leaving insufficient funds to complete the Resort project.  (*Id.*)

Raintree and Starwood acknowledged their obligation to repay the Plaintiffs.  (*Id.* ¶ 8.)  Regardless, to protect their interests, the Plaintiffs formed a committee consisting of others who suffered financial loss as a result of Raintree and Starwood's alleged misuse of the contributed funds.  (*Id.* ¶ 9.)[1]  But the alleged fraud did not stop with the misuse of Plaintiffs' funds.  Raintree and Starwood allegedly made representations that repayment was forthcoming, even though they knew payment could not and would not be made, in order to stall Plaintiffs' attempts to retain counsel and

---

[1] One member on the committee was Glazer, an attorney and a named defendant in this case. (*Id.* ¶ 10.) Glazer provided general legal advice to the Committee, suggested that the Plaintiffs did not have to get their own lawyers, and urged them to accept in good faith Raintree and Starwood's representations of repayment. (*Id.*) Despite his reassurances, however, Glazer did not disclose that his law firm was representing Starwood's interests. (*Id.* ¶ 11.) Glazer and his firm have been formally served, but have no involvement in the motions now pending, so the Court will refrain from addressing the facts constituting Count II (malpractice).

seek legal redress. (*Id.* ¶ 17.) Specifically, in 2008 and August 2009, outside of the settlement meeting and mediation, Raintree and Starwood contacted multiple Plaintiffs, urging them not to retain counsel and promising a significant settlement offer if they did not move forward with legal action. (*Id.* ¶ 18.) Raintree and Starwood, through the committee and by directly soliciting the Plaintiffs, made these repayment promises for two reasons. (*Id.* ¶ 13.) First, even though Raintree and Starwood knew that full or even substantial repayment was not a financial reality, they made these promises so Plaintiffs would settle the case for a fraction of what they initially paid for it, without taking steps to guard their interests. (*Id.* ¶ 18.) Second, they enabled Raintree and Starwood to regain ownership interests from the Plaintiffs for pennies on the dollar without having to repay the full initial purchase price. (*Id.* ¶¶ 34-35)

## II.     June 13, 2011 Evidentiary Hearing

At the April 28, 2011 status, the Court took under advisement, pending an evidentiary hearing, Raintree and Starwood's motions to dismiss based on improper venue. The Court provided the parties until May 31, 2011 to issue subpoenas to obtain material to present at the hearing, and required that the parties file any documentation to further support their motions by June 6, 2011. (Doc. 145.) The Court's April 28 order explicitly reserved its ruling on the merits of the motion to dismiss for improper venue until it had full benefit of Raintree, Starwood, and Plaintiffs' evidence from the evidentiary hearing. In the April 28 order, the Court only addressed Plaintiffs' argument that the allegations in the First Amended Complaint fell outside the scope of the forum selection clause. The Court saved all other issues, including the reasonableness of the forum selection clause and Raintree and Starwood's ability to enforce the clause as non-signatories, until now.

The focus of the evidentiary hearing was whether Raintree and Starwood were closely related to DTR so that they could enforce the forum selection clause. At the hearing, Raintree presented to the Court the declaration of Oscar Arroyo ("Arroyo"), an attorney licensed to practice in Mexico and an employee in Raintree's legal department. (June 13 Hr'g 8:18-22; Doc. 173, Arroyo Dec. ¶ 2.) Arroyo's declaration lays out the following string of acquisitions that Raintree asserted established that it was affiliated with DTR, and the declaration itself pointed to corporate documents supporting the various acquisitions described in the declaration:

- Raintree owns 100% of the stock in Canarias Future, S.L. ("Canarias Future") (Arroyo Decl. ¶ 5);

- Canarias Future owns 60.71% of the stock in CR Resorts Holding, S. de R.L. de C.V. ("CR Resorts Holding"); CR Resorts Parent Nominee Holding, LLC ("CR Resorts Parent Nominee"), which is 100% owned by Canarias Future, owns the remaining 39.29% of stock in CR Resorts Holding (*Id.* ¶ 6);

- CR Resorts Holding was the surviving entity after a 2009 merger with CR Resorts Cancun, S. de R.L. de C.V. ("CR Resorts Cancun") (*Id.* ¶ 7);

- CR Resorts Cancun is the surviving entity after its merger with DTR and Top Acquisitions Sub, S. de R.L. de C.V. ("Top Acquisitions") (*Id.* ¶ 9); and

- Top Acquisitions Sub, S. de R.L. de C.V. ("Top Acquisitions") owns 99.99% of DTR's stock (*Id.* ¶ 9).

Arroyo also submitted as an exhibit to his declaration the following organizational chart showing the corporate link between Raintree and DTR:



(Doc. 173, Ex. 1.)  In sum, as expressed in Arroyo's declaration, Raintree owns 100 percent of the stock in Canarias Future, and, in combination with the wholly-owned Nominee, owns all of the stock in CR Resorts Holding, the successor to DTR.[2]  (*Id.* ¶ 13.)

---

[2]  Plaintiffs objected to the Arroyo declaration at the evidentiary hearing and in filings soon after the hearing. The Court will address the substance of the objections in the Discussion section.

Arroyo has custody over the documents attached to his declaration. (June 13 Hr'g Tr. at 21:22-25; see also Arroyo Dec. ¶ 2.) His statements, under oath, are based upon his own review of the documents. (*Id.* at 22:6-9, 17-22; Arroyo Dec. ¶ 2.) Even though some of the documents are from an older Raintree company, which is now in liquidation, the defendant in this case, "new" Raintree, maintained and controlled these documents. (*Id.* at 22:23-23:7; *see also* Arroyo Dec.¶ 2.) Moreover, the Arroyo supplemental declaration authenticates the documents laying out the corporate transactions and structure. (*Id.* at 25:1-11; Arroyo Supp. ¶ 2.) Arroyo states that Mexican Notary Publics, who are Mexican lawyers, prepared the exhibits attached to the declaration. (June 13 Hr'g Tr. at 25:5-11; Arroyo Supp. ¶ 2.) The Notary Publics have a duty under law to authenticate documents referred to in the declaration and swear to their accuracy. (*Id.* at 25:5-11; Arroyo Supp. ¶ 2.) Many of the exhibits (3, 4, 7, 10, and 11) were also filed and recorded as public documents after the Notary Publics prepared them. (Arroyo Supp. ¶ 2.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue based on the existence of forum selection clause. *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003). Plaintiffs have the burden of establishing that venue is proper and must make a *prima facie* showing to that effect. *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2004 WL 1498145, at *1 (N.D. Ill. July 2, 2004) (Reinhard, J.). In ruling on a Rule 12(b)(3) motion, the Court assumes that the allegations in the First Amended Complaint are true, unless an affidavit offers contrary facts, and is free to consider facts outside the four corners of the complaint. *Ford v. Pacific WebWorks, Inc.*, No. 09 C 7867, 2011 WL 722499, at *2 (N.D. Ill. Feb. 23, 2011) (Lefkow,

J.).  Within this context, the Court will resolve any factual disputes in favor of the Plaintiffs.  *See Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

A forum selection clause that is part of an enforceable contract is presumed valid.  *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 210 (7th Cir. 1993); *see also AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 843 (N.D. Ill. 2006).  Where the forum selection clause specifies a specific venue with "mandatory or obligatory language, the clause will be enforced."  *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992).  As such, Plaintiffs have the heavy burden to make a "strong showing" that the forum selection clause is invalid.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978*, 659 F.2d 789, 795 (7th Cir. 1981) (there is a "special deference owed to forum-selection clauses in international contracts").

## DISCUSSION

### I.    Motions to Strike Declarations

As an initial matter, Plaintiffs challenge the sufficiency of the two declarations used to support Raintree and Starwood's argument that a valid forum selection clause mandates litigation in Mexico.  First is the declaration of Raintree's chairman and chief executive officer, Bech, which Raintree submitted and Starwood adopted.  His declaration serves principally to establish the relationship between DTR, the signatory to the forum selection clause, and Raintree, who seek to step into DTR's shoes for the purpose of enforcing the clause.  Second, Raintree has submitted, and Starwood has again adopted, the declaration of Oscar Arroyo, a Mexican lawyer for Raintree.  Raintree offered Arroyo's declaration as additional support for the facts in Bech's declaration.

## A.     Bech's Declaration

Plaintiffs seek to strike the Bech declaration because they contend: (1) there is no documentation attached to support his statements; and (2) some of the statements in the declaration are false.  To begin, Plaintiffs' repeated insistence that the Court has already ruled on the sufficiency of the Bech declaration is incorrect.  In the April 28 order, the Court specifically reserved ruling on the validity of the declaration itself until after the evidentiary hearing, at which point it would fully consider the declaration in ruling on the merits.  The Court indicated that further information was necessary to clarify the relationship between DTR and both Raintree and Starwood.  Now, after the evidentiary hearing, the Court has both Bech and Arroyo's declaration to piece together how Raintree and Starwood are linked to DTR and thus the forum selection clause.  In addition, the Court at the April 28 status stated, "I am also denying plaintiff's motion to strike the declarations of Bech and Jurado.  I certainly am allowed to consider them and take them into account and make a determination about the validity of them."  (April 28, 2011 Hr'g Tr. at 4:5-8.)

Here, the Bech declaration is properly before the Court.  Plaintiffs rely on an outdated version of Rule 56 to assert that Bech's declaration is faulty because he attached no supporting documentation to it.  Assuming that Rule 56 even applies to this motion to dismiss, the older subsection Plaintiffs rely upon required certified copies of documents specifically "referred to" in the affidavit.  *See* Fed. R. Civ. P. 56(e) (revised December 1, 2010).  Bech, however, does not mention any particular documents in his declaration that were not attached.  In fact, the new version of Rule 56 completely eliminated the requirement that the declarant must attach documentation referred to in the affidavit.  *See* Fed. R. Civ. P. 56(c)(4).  In his declaration, Bech provides testimony that, based on his knowledge as the chairman and chief executive officer of Raintree, certain

corporate mergers occurred resulting in Raintree being linked to DTR. (Bech Aff. ¶¶ 2-3.) Given that Arroyo's declaration, which the Court will address next, contains documentation supporting the same corporate developments contained in Bech's declaration, this argument does not prevail.

Moreover, Plaintiffs contend that the Bech declaration is false when it describes the relationship between DTR and Raintree in paragraphs two and three. Plaintiffs maintain that publically filed Securities and Exchange Commission documents show that Raintree acquired the "equity" or became a "successor-in-interest" to DTR before 2007, while the declaration states that Raintree first obtained an interest in DTR in 2007. (*See* Doc. 97 at 3-6.) Plaintiffs assume, however, that the declaration explicitly states when Raintree first acquired an interest in DTR. While the declaration is carefully crafted, it makes no such statement. It simply documents a series of transactions, including one in February 2007, showing that Raintree indirectly owns CR Resorts Holding, which is the successor to DTR through merger; this relationship is provided to show that Raintree is able to enforce the forum selection clause. Bech's declaration is proper for the Court to consider.[3]

## B. Arroyo Declaration

Plaintiffs challenge the Arroyo declaration, which Raintree submitted a week before the June 13 evidentiary hearing, and a supplement to it that Raintree provided at the hearing. Plaintiffs make two principal arguments: (1) its supplement was untimely; and (2) the declaration and supplement are defective. First, Raintree met the deadline of submitting the Arroyo declaration by June 6, 2011.

---

[3] Plaintiffs also cite *In re Gulf Oil/Cities Serv. Tender Offer Litigation*, 776 F. Supp. 838, 839 (S.D. N.Y. 1991) for the proposition that Bech's absence from the evidentiary hearing means his testimony must be barred. This case, however, is not binding on this Court and is factually dissimilar. *Gulf Oil* barred the use of evidence at trial where the key witness sought to be absent from the plaintiff's case but then reserve the right to decide whether it was to his advantage to testify during defendant's case-in-chief. Here, in contrast, Bech submitted an declaration that is properly before the Court for the purpose of supporting a specific area of inquiry in an evidentiary hearing. This case, of course, is far from trial and because the Court has before it all the evidence it needs to rule on the limited improper venue issue, any further discovery is unnecessary.

This provided the Court and Plaintiffs notice as to the nature of the evidence it was planning to present at the hearing. During the hearing, Raintree provided the Court with a supplemental declaration from Arroyo, which highlighted the authenticity and veracity of the documents attached to the declaration. Although the supplement was after the Court-imposed June 6 deadline, it did not add any substantive facts to the declaration; it merely provided an evidentiary foundation for Arroyo's statements. There is no basis to discard the supplement on this ground.

Second, Plaintiffs assert that the Arroyo declaration is "incompetent." While the Arroyo declaration and attached documents are imperfect (i.e., some of the attached documents were in Spanish and Arroyo is an interested Raintree employee), the Court finds that they are reliable and useful on the issue of whether Raintree and Starwood can enforce the forum selection clause. Plaintiffs' dispute as to the authenticity of the declaration is misplaced, as Arroyo had custody of the documents, which were maintained and controlled by "new" Raintree. (June 13 Hr'g Tr. at 21:22-25; 22:23-23:7; *see also* Arroyo Dec. ¶ 2.) Arroyo's statements are based upon his own review of the documents. (*Id.* at 22:6-9, 17-22; Arroyo Dec. ¶ 2.) Any question about the veracity of the documents is further dispelled by Arroyo's supplemental declaration which explains that Mexican Notary Publics authenticated the documents and attested to their truth and accuracy. (Arroyo Supp. ¶ 2.) Both the Bech and Arroyo declaration are proper and reliable, and consequently the Court denies the Plaintiffs' motions to strike them. (Docs. 90, 194, 199, 202 and 210).

## III.  Motions to Dismiss for Improper Venue

Raintree and Starwood seek to invoke the Purchase Agreements' forum selection clause, which requires litigation of all disputes in Mexico. The Court must resolve three questions with respect to the clause: (1) whether this particular dispute fits within the scope of the clause; (2)

whether the clause is reasonable; and (3) whether Raintree and Starwood, as nonsignatories to the forum selection clause, can step into the place of DTR to enforce it.

## A.    Scope of Forum Selection Clause

Plaintiffs assert that the fraud claim in the First Amended Complaint relates only to Raintree and Starwood's actions after the Plaintiffs signed the Purchase Agreements and paid for the fractional interests—specifically when Raintree and Starwood made promises of repayment—not to the initial misrepresentations in the sale of the fractional interests. Plaintiffs thus contend that the Purchase Agreement's forum selection clause does not apply.

As the Court already held in the April 28 order, the First Amended Complaint describes the fraudulent conduct as a two-part scheme involving initial misrepresentations made to lure investors into the scheme and later misrepresentations aimed at buying back the Plaintiffs' interests for pennies on the dollar. The Purchase Agreement specifically covers "controvers[ies] on the interpretation and compliance with the rights and obligations of this Agreement," and there is no indication from the clause itself that it is intended to apply only to the initial purchase of the fractional interests. (*See* Doc. 67, Ex. 4.) The forum selection clause in the Purchase Agreement therefore applies to this dispute.

## B.    Reasonableness

A forum selection clause is presumptively valid. *See Bremen*, 407 U.S. at 10; *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006). Venue is a "matter of convenience of litigants and witnesses," so an objection to venue can be waived. *Auto. Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA*, 502 F.3d 740, 746 (7th Cir. 2007); *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004). Forum

12

selection clauses represent an "*ex ante* determination by the parties themselves of the place that will be the most convenient for any litigation that may come along." *Automobile Mechanics*, 502 F.3d at 746.

The presumption of validity can be rebutted by showing that the clause is "unreasonable and unjust, or that the clause [i]s invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15. Specifically, the forum selection clause can be invalid in three circumstances: (1) "[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *AAR Intern., Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 525 (7th Cir. 2001). Because Plaintiffs are challenging the enforceability of the forum selection clause, they bear the "heavy burden" of showing that litigating in the selected forum would be so inconvenient that it would essentially deprive them of the opportunity to bring their claims at all. *Bremen*, 407 U.S. at 19. This burden recognizes that Plaintiffs signed the Purchase Agreement containing the forum selection clause and as a result waived the ability to challenge Mexico as an "inconvenient" forum. *See Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990). Similarly, where, like here, the Plaintiffs dispute the forum selection clause based on fraud, they must establish not just a fraudulent transaction, they must show that fraud was part of the selection of the forum. *See Scherk v. Alberto Culver*, 417 U.S. 506, 519 n.14 (1974) (explaining that the concern in *Bremen* regarding fraud and forum selection clauses "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means

that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion."); *see also Trio Video, LLC v. NTL Capital, LLC*, No. 07 C 2719, 2007 WL 2230036, at *3 (N.D. Ill. July 27, 2007) (Gettleman, J.) (citing *Bremen*, 407 U.S. at 13-14 and holding "it is the inclusion of the forum selection clause that must be the result of fraud, not simply the defendants' decision to enter the entire contract").

Plaintiffs first assert that the Purchase Agreement is invalid because it was procured by fraud. Plaintiffs' argument in this respect, however, relates to the fraudulent nature of the scheme itself, not misrepresentations made about the existence and specifics of the forum selection clause. For example, there are no allegations that the forum selection clause, on its face, was not a readily apparent part of the Purchase Agreement. *See, e.g., Trio Video*, 2007 WL 2230036, at *3 (forum selection clause not product of fraud because "nothing about the clause itself" indicated fraud because the "clause is the same size font as the rest of the terms and conditions of the [contract], and the clause is located only a few lines above the plaintiff's signature"); *Bombshell Accessories, Inc. v. L.A. Silver, Inc.*, No. 10 C 8042, 2011 WL 3610088, at *5 (N.D. Ill. Aug. 16, 2011) (Dow, J.) (forum selection clause not procured by fraud because "it was not written in such fine print or buried boilerplate as to escape [] notice"). In this particular transaction, the forum selection clause was a part of the bargain that was evident to both parties. Moreover, because this clause was a negotiated aspect of the contract that the parties were able to consider, "it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Bremen*, 490 U.S. at 16. As such, Plaintiffs fail to establish the "heavy burden" that they were tricked into the inclusion of the forum selection clause in the Purchase Agreements. *See Northwestern Nat'l*, 916 F.2d at 375.

Plaintiffs also maintain that litigation in Mexico would be so inconvenient that the Court should disregard the forum selection clause. Plaintiffs fail to present with any specificity how litigation in Mexico would essentially deprive them of any chance to advance their claims. Their argument in this respect is conclusory and far short of the "strong showing" *Bremen* requires to overcome the presumption of validity.[4] *See Bremen*, 407 U.S. at 15; *Bombshell Accessories*, 2011 WL 3610088, at *6. In other words, besides making general claims that Mexico would be more costly and inconvenient, Plaintiffs do not provide a concrete basis to find that they would be foreclosed from bringing their claims there. In fact, the forum selection clause provides that Mexico law will apply to this action, DTR is a Mexican company, performance of the contract—building the Resort—would have been in Mexico, and relevant witnesses and documents would also be in Mexico. *See, e.g., Clinton v. Janger*, 583 F. Supp. 284, 289 (N.D. Ill. 1984) (noting that which law will apply and the availability of witnesses are factors when considering whether a forum selection clause is reasonable).

In addition, the mandatory or permissive nature of the forum selection clause dictates whether it is enforceable: "[W[here venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Muzumdar*,

---

[4] In the initial briefing on the motion to dismiss for improper venue, Plaintiffs failed to explain with particularity how litigation in Mexico was inconvenient. They supplemented their submission with more details in their motion to reconsider the Court's April 28 order, but even these newly added arguments fail to meet their burden. That Plaintiffs' payments went to a United States company instead of DTR does not, by itself, establish that this was not a Mexican transaction. Further, Plaintiffs present a letter where a member information meeting in Mexico was postponed in November 2010 because of a pending criminal mediation hearing at the Los Cabos prosecutors office. (Doc. 90, Ex. 15.) There is nothing specifically linking this letter to the allegations of this case and any impact this would have on this case is merely speculation. Finally, the operative complaint seeks monetary damages, so Plaintiffs' argument that Mexico is inconvenient because a Mexican judge could not "order" Starwood to complete the project is unsupported and irrelevant to this analysis.

438 F.3d at 762.  Here, the forum selection clause states that the "parties hereby agree to submit themselves to the applicable laws and competent courts of the City of Mexico, Federal District, *expressly waiving any other forum that may correspond to them by reason of their present or future domiciles*.  (Doc. 69, Ex. 4.) (emphasis added).  This language establishes Mexico as the only venue for disputes, as Plaintiffs waived the ability to bring suit in any other forum.  *See, e.g., Export-Import Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573, 2010 WL 3743826, at *7 (S.D.N.Y. Sept. 24, 2010) (finding the following forum selection clause to be valid: "[f]or the interpretation and fulfillment of this Contract, the parties are subject specifically to the jurisdiction and authority of the courts of the metropolitan zone of the City of Guadalajara, Jal., Mexico, or to the local or federal courts with jurisdiction with headquarters in the city, county and State of New York, at the choice of the plaintiff, *waiving any other jurisdiction that might correspond by virtue of their present or future domiciles*") (emphasis added); *Alternative Delivery Solutions, Inc. v. R. R. Donnelley & Sons Co.*, No. 05 C 172, 2005 WL 1862631, at *5 (W.D. Tex. July 8, 2005) (forum selection clause stated: "[t]o resolve any dispute arising in connection with the interpretation or performance of this agreement, the parties submit unconditionally to the laws and jurisdiction of the competent courts of law sitting in Mexico City, *expressly waiving any other forum to which they may be entitled by reason of their present or future domiciles*," and because the parties specifically waived any other forum, the clause was exclusive and mandatory) (emphasis added).

### C.    Affiliation with DTR

DTR, as the initial developer, signed the Purchase Agreements with Plaintiffs that included the clause selecting Mexico as the forum to litigate any disputes resulting from the sale of the

condominium interests. The final issue is whether Raintree and Starwood, as a nonsignatories to the Purchase Agreement, can enforce the forum selection clause against Plaintiffs.

1. Raintree

The Court already set forth the law governing this analysis in its April 28 order and the Court incorporates a similar version of it here. "To bind a [non-signatory] to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). But because "closely related" and "foreseeability" are difficult to define and apply, the "principle of mutuality" helps determine whether a non-signatory can enforce a forum selection clause. *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995). In *Refco*, the Seventh Circuit found a commodities broker was "closely related" to the signatories to a forum selection clause because the signatories were promoters and trustees entirely under its control, and could therefore invoke the clause. *Id.* at 828. The court noted that the plaintiffs could have enforced the forum selection clause against the broker, and consequently "mutuality requires that [the broker] be allowed to invoke the clause. Otherwise the plaintiffs would have a choice of venues but [the broker] would not, and there is no reason for such an asymmetry of procedural choices." *Id.*; *see Am. Patriot*, 364 F.3d at 889 (suing an "affiliate" of signatory did not "defeat" forum selection clause); *Hugel*, 999 F.2d at 210 (signatory owned 100% of stock in one non-signatory and 99% of the stock of another, and both non-signatories were "equally bound" by the forum selection clause). Finally, a variation of the equitable estoppel doctrine can support allowing nonsignatories to enforce the forum selection clause. *See, e.g., Organ v. Byron*, 434 F. Supp. 2d 539, 543 (N.D. Ill. 2005) (Zagel, J.) (quoting *Sparks Tune-Up Centers, Inc. v. Strong*, No. 95 C 5902, 1994 WL 188211, at *5 (N.D. Ill. May 12, 1994), which allowed a nonsignatory to

17

"benefit from" a forum selection clause in order to "prevent a contracting party from escaping contractual obligations which he bargained for/or agreed upon.").

Here, Raintree has provided the Court with the declarations of Bech and Arroyo, both of which solidify Raintree's close relationship with DTR, the signatory of the Purchase Agreement. The evidentiary hearing provided the Court with additional statements to establish that Raintree indirectly owns CR Resorts Holding, which is the successor to DTR through merger. Plaintiffs have focused their attack primarily on the sufficiency of the Bech and Arroyo declarations, which are properly before the Court as detailed above. The declarations of Bech and Arroyo, which portray Raintree as "closely related" to DTR, are unrebutted. Raintree is thus able to step into the shoes of DTR to enforce the forum selection clause.

### 2. Starwood

Starwood's ability to enforce the forum selection clause also hinges on whether it is "closely related" to DTR. Starwood has not presented any evidence in support of its motion to dismiss other than adopting the Bech and Arroyo declarations. These declarations do not detail Starwood's exact involvement with DTR. Plaintiffs, however, have submitted documents that demonstrate that in December 2006, DTR and Starwood entered into an agreement whereby a Starwood affiliate purchased some part of the Resort's assets (specifically, the land, development rights and unsold villas), but that the transaction between DTR and the Starwood affiliate "will not affect in any way the acquired rights to use and enjoy the specific residential unit you have purchased within the [Resort]." (*See* Doc. 175-1; 175-3 ).[5] One of those documents confirmed that Starwood remained

---

[5]Plaintiffs have a something of a Catch-22 with respect to Starwood's venue motion. On the one hand, they want to establish Starwood's involvement with the Resort so that they can hold Starwood responsible for the fraudulent scheme. On the other hand, for purposes of the motion to dismiss, they want to portray Starwood as separate and apart

the administrator of the resort. (*See* Doc. 175-1.) A March 2007 communication explained that Starwood expected to begin construction in the second quarter of 2007. (*See* Doc. 175-4.) Six months later, in September 2007, Plaintiffs received another communication clarifying that although Starwood purchased "the land and development rights [to the Resort], [Starwood was] unable to purchase the contracts that were sold prior to the acquisition in December," but that the "buyers who purchased from Raintree will have occupancy rights" to the villas to be built by Starwood. (Doc. 155-7.) One plaintiff received a letter from a Starwood affiliate telling her that as a result of the economic downturn, the Resort would not be built but that she needed to take the issue of a refund up with Raintree, not Starwood, because the plaintiff signed the deal with DTR, now Raintree. (*See* Doc. 155-6.) In other words, Plaintiffs' documents demonstrate that Starwood was ultimately responsible for building and running the Resort, but it did not acquire Plaintiffs' Purchase Agreements (and, presumably, any corresponding revenue streams) as part of the transaction with DTR.

Plaintiffs assert that because Starwood explicitly did not buy Raintree's rights in the Purchase Agreements, Starwood cannot enforce the forum selection clause. However, binding caselaw is clear that simply because Starwood does not own DTR's contract rights (or DTR itself) does not mean that it cannot step into the shoes of DTR to assert the forum selection clause. Crediting the Plaintiffs' own allegations and documents presented, because the Resort was not built, Plaintiffs should have recourse against *both* Raintree and Starwood under the Purchase Agreement because although Raintree is the contracting party, Starwood is the party responsible for actually building and running the Resort as a result of the transaction with DTR. In other words, even though Raintree is

---

from DTR, so that Starwood cannot enforce the forum selection clause.

technically the contracting party, Starwood is ultimately responsible for performance of the Purchase Agreement by providing the condominiums. In such instances, the courts take a practical view with respect to forum selection clauses. Like the broker in *Refco*, "[a]ll [Starwood] is doing in invoking the forum selection clause to which it is not a party is accepting one of the premises of plaintiff's suit—that the [signatories] are indeed simply cat's paws of [Starwood]—and pointing out that the implication is that [the contracts at issue] including the forum selection clause, are really between the plaintiffs and [Starwood]." *Refco*, 56 F.3d at 828. Further, under the principle of mutuality highlighted in *Refco*, if Starwood sued one of the plaintiffs for not paying to Starwood, as the administrator of the Resort, the maintenance fee required by § 6 of the Purchase Agreement, the plaintiff would certainly have the right to invoke the forum selection clause and make Starwood litigate in Mexico. In other words, in that hypothetical situation, Starwood would not be able to sue one of the plaintiffs in the forum of Starwood's choosing simply because Starwood was not a signatory to the Purchase Agreement.

*Alternative Delivery Solutions* is also illustrative of the practical view. There, the plaintiff signed a contract with the Mexican affiliate of one of the defendants for a joint project that would create advertisements for Mexico. *See* 2006 WL 1862631 at *1. That agreement had a forum selection clause requiring disputes to be litigated in Mexico. *Id*. When the project went south, the plaintiff sued both the affiliate and its parent, and the parent moved to dismiss based on the forum selection clause, even though it was not a signatory. *Id*. at *15. The court found the parent and affiliate were "closely related," and also noted that the plaintiff's claims against the non-signatory, like Plaintiffs' claims here, "presume[] the existence of the written agreement" and that the plaintiff, like Plaintiffs here, make allegations "of substantially interdependent and concerted misconduct by

both the nonsignatory and one . . . of the signatories of the contract." *Id.* at \*16.  Plaintiffs allege Starwood and Raintree teamed up to commit fraud with respect to the Resort.  Starwood may enforce the forum selection clause even though it did not sign the Purchase Agreements.  Raintree and Starwood's motions to dismiss for improper venue (Docs. 67 and 71) are granted.

## V.    Remaining Pending Motions

Because the Court analyzes the venue issues in full above, Plaintiffs' motion to reconsider the Court's April 28 order (Doc. 155) is denied.  Plaintiffs' motion to amend the complaint is also denied (Doc. 153).  Plaintiffs filed that motion after the Court's April 28 order during the period the Court set aside for discovery on Raintree and Starwood's motions to dismiss and just three months after the Court already allowed Plaintiffs to file their First Amended Complaint.  In any event, after reviewing Plaintiffs new proposed complaint, the Court finds that it would not alter the above rulings in any way.[6]

Second, Plaintiffs seek the 2006 settlement agreement between Raintree and Starwood showing that Starwood purchased the land and development rights for the resort project but not the Purchase Agreements.  The Court ordered Raintree to provide the December 2006 settlement agreement that Plaintiffs requested for *ex parte* review.  (Doc. 183.)  As noted at the June 13 evidentiary hearing, these documents related to a restructuring of debt between Raintree and Starwood, not Starwood's acquisition of the land and developmental rights.  Based on the Court's review of this document, it is not relevant to the narrow improper venue issue now before the Court

---

[6]The proposed new complaint alleges that the fraud extended to the forum selection clause, "like every other aspect of the contract" because Plaintiffs would never have agreed to litigate in Mexico if they knew the entire project was a sham.  (*See* Doc. 153-1 at ¶ 6.)  Again, Plaintiffs are really alleging that the Plaintiffs were tricked into signing the overall agreement, not that they were tricked into agreeing to forum selection clause specifically, which is the concern in *Bremen*.  Plaintiffs do not allege that the forum selection clause was hidden in fine print, or added later, or changed after they signed the agreements.

and disclosure to Plaintiffs would be pointless. Given the Court's ruling above, Plaintiffs' motions seeking the settlement agreement (Docs. 186 and 196) are denied.

Third, Plaintiffs' motion to strike the motion to dismiss or continue the June 13 evidentiary hearing is denied (Doc. 191). Plaintiffs claim surprise about not knowing about the Arroyo declaration until a week before the evidentiary hearing, which prevented them from deposing him. The Court provided Plaintiffs with the ability to conduct discovery limited to the specific issue of Raintree and Starwood's ability to step into DTR's shoes to enforce the forum selection clause and Plaintiffs never attempted to conduct a Rule 30(b)(6) deposition on this issue. (June 13 Hr'g 31:17-20; Doc. 160 at 2-3.) To the extent that Plaintiffs attempted to obtain a copy of the December 2006 settlement, as already discussed, such a document is irrelevant to the pending issue and it was permissible for Raintree to decline to produce the confidential December 2006 settlement agreement. Regardless, the Plaintiffs were able to present other evidence undermining Starwood's ability to enforce the forum selection clause.

## CONCLUSION AND ORDER

For the above reasons, the Court rules as follows on the following pending motions:

1. Raintree's motion to dismiss for improper venue is granted (Doc. 67);

2. Starwood's motion to dismiss for improper venue is granted (Doc. 71);

3. Plaintiffs' motion to reconsider is denied (Doc. 155);

4. Plaintiffs' motions to strike the Bech and Arroyo declarations is denied (Docs. 90, 194, 199, 202 and 210);

5. Plaintiffs' motion to amend the complaint is denied (Doc. 153);

6. Plaintiffs' motions to compel (Docs. 186 and 196) are denied; and

7. Plaintiffs' motion to strike the motion to dismiss or continue the June 13 evidentiary hearing is denied (Doc. 191).

The Court will hold a status on October 6, 2011 for the remaining defendants to set a discovery schedule.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 29, 2011